IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                                 :
MARK J. GATTUSO, SR., et al.,    :      HON. JEROME B. SIMANDLE
                                 :
              Plaintiffs,        :      Civil No. 11-5763 (JBS/AMD)
                                 :
        v.                       :
                                 :            OPINION
NEW JERSEY DEPARTMENT OF HUMAN   :
SERVICES, et al.,                :
                                 :
              Defendants.        :
                                 :
```

APPEARANCES:

Mark J. Gattuso, Sr.
Margaret C. Gattuso
1801 Egg Harbor Road, Apartment 106
Lindenwold, NJ 08021
        Plaintiffs pro se and as guardians of Joseph C. Gattuso,
        Non-Competent Adult Child

Jeffrey S. Chiesa
Attorney General of New Jersey
        By: Molly Ann Moynihan,
        Deputy Attorney General
Richard J. Hughes Justice Complex
P.O. Box 112
25 Market Street
Trenton, NJ 08625
        Attorney for Defendants New Jersey Department of Human
        Services and New Jersey Division of Disability Services

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

        This case is before the Court on the motion of Defendants

New Jersey Department of Human Services ("DHS") and Division of

Disability Services ("DDS")[1] to dismiss the action for lack of

_____

        [1] Plaintiffs named three Defendants in their Complaint, the
DHS and DDS, as well as the "Office of Community Resources for

subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs in this matter are Mark J. Gattuso, Sr. and Margaret C. Gattuso, who bring claims on behalf of their non-competent adult child Joseph C. Gattuso, and on their own behalf for alleged violations of the laws and Constitution of the United States, specifically, Title II of the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. §§ 12131-12134.

Plaintiffs allege that the state of New Jersey is discriminating against them and their son, on the basis of age and disability, by failing to provide more resources and services than it already is to permit Joseph to be cared for at home rather than institutionalized in a long-term care facility; Plaintiffs further allege that their due process rights are violated by the state's benefits denial procedures. Defendants argue that the Complaint must be dismissed because this Court lacks subject matter jurisdiction to hear Plaintiffs' claims because the State Defendants retain state sovereign immunity to

---

People with Disabilities." Defendants have indicated, and Plaintiffs have not contradicted, there is no such office as the "Office of Community Resources for People with Disabilities" in the state of New Jersey. Defendants note that the Plaintiffs appear to be referring to the "Office of Home and Community Services", which is an office within the DDS. The Court will, accordingly, interpret Plaintiffs' Complaint as naming only two Defendants: the DHS and the DDS.

suit under the Eleventh Amendment to the United States Constitution, or in the alternative, because Plaintiffs fail to state a claim to relief.

The principal issues to be decided in this Opinion are (1) whether Congress has validly abrogated New Jersey's sovereign immunity as to Plaintiffs' claims, and (2) whether Plaintiffs adequately state a claim for relief that can be granted.  As explained below, because the Court concludes that Congress has not abrogated the State's sovereign immunity as to Plaintiffs' claims, and because the Court concludes that Plaintiffs do not otherwise state a claim to relief that the Court can grant, the Court must dismiss Plaintiffs' Complaint.

## II.  BACKGROUND

Because Plaintiffs are proceeding without the benefit of a lawyer and drafted their Complaint on their own, the Court is mindful that it should construe Plaintiffs' pleadings liberally in their favor.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  For the purposes of deciding Defendants' motion, the Court will consider only facts alleged in the Complaint and matters of public record.[2]

_____

[2] The parties' briefs and arguments contain significant factual material beyond that alleged in the Complaint, related to, among other things, Joseph Gattuso's history of benefits received from various state programs.  See, e.g., Lubrano Cert., attached to Defs.' Motion to Dismiss.  The Court has concluded

Plaintiffs' dependent adult child, Joseph Gattuso, suffers from a rare disease (not identified in the pleadings) that requires specialized care and nearly constant monitoring by a caregiver.  Compl. at 2.  He is 26 years old, and the Court infers from the Complaint that Plaintiffs receive funding and services through the New Jersey Community Resources for People with Disabilities ("CRPD") Waiver program to support Joseph's care at home so that he need not be institutionalized in a nursing home or other long-term care facility.  Id.  Plaintiffs allege that they are his primary caregivers (id. at 1), but also allege that some of the funding they receive from the CRPD waiver services pays for in-home nursing support to assist them in the care they provide.  Id. at 1-2.  Plaintiffs themselves also suffer from some significant physical disabilities (they allege that they are "totally disabled").  Id. at 4.

The CRPD Waiver program is a New Jersey entitlement program authorized under and funded in part through the Medicaid provisions of the federal Social Security Act, 42 U.S.C. § 1396n. The CRPD Waiver program provides funding and services to Medicaid

---

that it does not need to consider such factual material to resolve the instant motion to dismiss, even though Defendants challenge the substantive basis of the Court's subject matter jurisdiction, for reasons that will be explained below. Consequently, the Court has not considered this factual record when deciding the instant motion.  Therefore, Plaintiffs' motion to strike the certification of Ms. Lubrano [Docket Item 23] will be denied as moot, since the certification was not considered.

beneficiaries to enable them to live in a home or community-based facility rather than in a long-term care facility.  See N.J. Admin. Code § 10:60-6.1.  "The purpose of these programs is to help eligible beneficiaries remain in the community, or return to the community, rather than be cared for in a nursing facility or hospital setting."  Id. at § 10:60-6.1(a).  The CRPD Waiver program "serves a limited number of beneficiaries [in New Jersey] who meet the medical and financial eligibility requirements." Id. at § 10:60-6.1(b).  To be eligible for CRPD Waiver funding, a beneficiary must be in need of "nursing facility level of care criteria," among other income-based eligibility requirements. Id. at § 10:60-6.2.  The CRPD Waiver provides for several services including in-home nursing care and case management, but "[t]he total cost of all services provided through the Community Resources for People with Disabilities (CRPD) Waiver program must be less than the cost of care in an appropriate institution." Id. at § 10:60-6.3(d).

Plaintiffs claim that the benefits provided under this program are insufficient in ways that are discriminatory, and that the process whereby determinations of benefits are made deprives them of the due process of law.  Specifically, Plaintiffs Complaint seeks relief through four counts.

Count one claims that the funding recipients of the CRPD Waiver funding receive is insufficient for beneficiaries to pay

for adequate in-home nursing care because of the CRPD monthly
cost cap allowance.  Compl. at 1.  The Court infers from this
allegation that Plaintiffs themselves are impacted by this
monthly cost cap, though Plaintiffs do no so specifically allege.
The Court also infers that the CRPD Waiver cost cap to which the
Plaintiffs refer is the requirement that "[t]he total cost of all
services provided through the Community Resources for People with
Disabilities (CRPD) Waiver program must be less than the cost of
care in an appropriate institution."  N.J. Admin. Code § 10:60-
6.3(d).  Plaintiffs allege that this monthly cost cap violates
the Medicaid Act, 42 U.S.C. § 1396a(a)(30)(A), regarding
reimbursement rates for the enlistment of qualified personnel
such as skilled nurses.  Compl. at 1.  Plaintiffs do not allege
any facts about the dollar amount at which their monthly costs
are capped by Defendants.

Plaintiffs further allege that this monthly cost cap
allowance threatens that beneficiaries (again, the Court infers
that Plaintiffs include Joseph in this category) who would
otherwise be better served in home or community placement may be
institutionalized in order to receive adequate care.  Plaintiffs
further conclude that the Defendant state agencies permit or
impose this funding limitation as a form of discrimination
against the most disabled individuals in the state.  Plaintiffs
allege that this limitation on CRPD Waiver funding is a violation

6

of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

Count two of the Complaint claims that Defendants are discriminating against Joseph on the basis of his age because the monthly cost cap of the CRPD Wavier program was first imposed on Joseph when he turned 21 years old.

Count three of the Complaint claims that Defendants violate Plaintiffs' due process rights, presumably under the Fourteenth Amendment, for two reasons: first, because the Defendant agencies allegedly fail to put any determinations in writing generally, and secondly because "the Director of Medicaid" has some authority in New Jersey to "overturn" the decision of an administrative law judge on some unspecified matters, presumably relating to Defendants' decisions relating to CRPD Waiver benefits and services.  Compl. at 3.

Count four of the Complaint alleges that Defendants additionally discriminate under Title II of the ADA against Plaintiffs themselves as disabled caregivers because the Defendants allegedly have failed to make any reasonable accommodations for Plaintiffs' disabilities and inability to provide adequate physical care for Joseph, but still are able to manage and direct such care from their home.  Compl. at 3-4. Plaintiffs do not specify what services are not being provided by Defendants that could constitute a reasonable accommodation.

7

Plaintiffs seek exclusively monetary relief in the form of damages; they do not seek injunctive or declaratory relief. Compl. at 5.

Plaintiffs filed their Complaint on October 4, 2011. Plaintiffs filed a motion for a protective order on December 19, 2011, and a motion for an order to show cause why immediate injunctive relief should not be entered on December 20, 2011, both seeking entry of an order unrelated to the claims raised in Plaintiffs Complaint.  [Docket Items 8 & 12].[3]  The Court held a hearing on these preliminary motions on December 23, 2011, after which the Court denied the relief sought, concluding that Plaintiffs had not made the required showing of immediate and irreparable injury.  [Docket Item 17.]

Thereafter, Defendants filed the instant motion to dismiss.


## III. DISCUSSION

### A.  Standard

#### 1.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss on the grounds that the court lacks subject matter jurisdiction.  The Third Circuit has identified two types of

---

[3] Plaintiffs sought an order preventing Defendants from cancelling Joseph's Medicaid benefits, which Plaintiffs alleged was imminently threatened.

jurisdictional defects subject to challenge by a Rule 12(b)(1) motion: (1) those that challenge the subject matter jurisdiction as sufficiently pleaded on the face of the complaint, and (2) those that attack the existence of subject matter jurisdiction in fact. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977); NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 n.7 (3d Cir. 2001). Here, Defendants state that their Rule 12(b)(1) motion is both a facial attack on the subject matter jurisdiction of the Court and a factual attack on the substance of Court's jurisdiction. On a facial attack, the Court considers only the allegations of the Complaint and documents referenced therein, construing them in the light most favorable to Plaintiff. Pearson v. Chugach Gvt. Svcs. Inc., 669 F. Supp. 2d 467, 469-70 (D. Del. 2009). On a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Mortonson, 549 F.2d at 891.

1. Motion to Dismiss for Failure to State a Claim

In deciding the a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must look to the face of the Complaint and decide, taking all of the allegations of fact as true and

construing them in a light most favorable to the Plaintiffs, whether their allegations state any legal claim, and "determine whether, under any reasonable reading of the complaint, the plaintiff is entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  For Plaintiffs to proceed with their claims, the Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

**B.  Analysis**

Defendants argue first that the Court must dismiss this action for lack of subject matter jurisdiction because Defendants, as state agencies,[4] enjoy sovereign immunity from suit under the Eleventh Amendment to the federal constitution. Plaintiffs oppose this argument on the grounds that Congress has abrogated the states' sovereign immunity under the Americans with Disabilities Act.

---

[4] It is uncontested that Defendants, as state-controlled agencies, should be considered "arms of the state" for Eleventh Amendment purposes.  See Independent Enterprises Inc. v. Pittsburgh Water and Sewer Auth., 103 F.3d 1165, 1173 (3d Cir 1997) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989)).

1.  <u>Sovereign Immunity Generally</u>

The Eleventh Amendment provides that "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. As interpreted by the Supreme Court, the Eleventh Amendment provides states with immunity from suit for monetary relief in federal court not only from suits brought by citizens of other states, but also from suits brought by their own citizens. <u>Hans v. Louisiana</u>, 134 U.S. 1, 13-14 (1890); <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 67-68 (1996).

But a state's Eleventh Amendment sovereign immunity from federal suit can be abrogated by Congress under appropriate circumstances. <u>College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 670 (1999). Specifically, Congress may authorize suit by private citizen against a state when it acts pursuant to Section 5 of the Fourteenth Amendment, "to enforce the [protections of the] Fourteenth Amendment -- an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." <u>Id.</u> Congressional abrogation of state sovereign immunity must be very explicit, however; courts have upheld statutory abrogation "when it [Congress] unequivocally intends to

do so and acts pursuant to a valid grant of constitutional authority." Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002) (citing Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356, 363 (2001)).  The Supreme Court has held that even when Congress expressly abrogates state sovereign immunity pursuant to § 5 of the Fourteenth Amendment, the abrogation will only be upheld by a federal court when the abrogation is "congruent and proportional" to a documented pattern of constitutional violations by states. Coleman v. Court of Appeals of Maryland, --- U.S. ---, 132 S. Ct. 1327 (2012) ("To abrogate the States' immunity from suits for damages under § 5, Congress must identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations").

Therefore, the Court lacks subject matter jurisdiction to hear Plaintiffs' claims for damages[5] against the Defendants, who are agencies of the State of New Jersey, unless Plaintiffs can point to an express and valid abrogation of Defendants' sovereign immunity.  The Court, liberally construing the pro se Complaint,

---

[5] The Court notes that because Plaintiffs are only seeking damages as a remedy, and are not suing to enjoin any officer of Defendant agencies to take any prospective action, the Court will not evaluate Plaintiffs' claims under the doctrine of Ex parte Young, 209 U.S. 123 (1908).  See Koslow, 302 F.3d at 168 ("[o]f course, in addition, a person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the 'legal fiction' of Ex Parte Young, despite the text of the eleventh amendment.")

12

interprets Plaintiffs to seek damages against the State of New Jersey under Title II of the Americans with Disabilities Act, the Civil Rights Act of 1871 (codified at 42 U.S.C. § 1983), the Age Discrimination in Federally Assisted Programs Act (42 U.S.C. § 6101 et seq.), and a specific Medicaid provision of the Social Security Act, 42 U.S.C. § 1396a(a)(30)(A).

2. Claims for Violations under § 1983

Plaintiffs specifically identify the conduct alleged in counts one and four as violating Title II of the ADA, but do not specifically identify the cause of action on which they rely for their other claims.  For example, count two alleges unlawful discrimination on the basis of age, and count three alleges obstruction of justice on the basis of various alleged due process violations, but neither identify any source of law as a private right of action for such violations.  To the extent that Plaintiffs intend to vindicate such alleged violations of rights pursuant to 42 U.S.C. § 1983,[6] Defendants argue that they are barred by sovereign immunity.  Defendants argue that the state of New Jersey, as a sovereign, is not a "person" pursuant to the text of § 1983, and that therefore they are immune from suit under the statute.  Plaintiffs do not respond to this argument.

---

[6] Section 1983 prohibits "persons" from subjecting citizens, under color of state law, to a deprivation of any "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.

13

Whether the argument is properly characterized as one of sovereign immunity or simple failure to state a claim, the Court agrees that states and state agencies are not amenable to suit under § 1983 because states and "arms of the state" such as Defendants here are not "persons" under the statute.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64-71 (1989) (explaining that neither a state nor a state agency is a "person" for purposes of 42 U.S.C. § 1983); Doe v. Div. of Youth & Family Servs., 148 F. Supp. 2d 462, 484 (D.N.J. 2001) (holding that New Jersey Division of Youth and Family Services is a state agency for Eleventh Amendment purposes, is not a "person" under § 1983, and entitled to sovereign immunity on § 1983 claims). Accordingly, the Court will grant Defendants' motion to dismiss Plaintiffs' claims brought pursuant to § 1983.

### 3.   Age Discrimination Act and Medicaid

Defendants likewise argue that suit against them on the grounds of the Age Discrimination Act or the Medicaid provisions of the Social Security Act are barred by sovereign immunity because Plaintiffs can identify no explicit Congressional abrogation of state sovereign immunity for such claims. Plaintiffs do not respond to this argument.  As it is Plaintiffs' burden to establish the Court's subject matter jurisdiction, and Plaintiffs have not pointed the Court to any valid abrogation clause for these claims (to the extent that either such statutory

14

claim provides an individual cause of action for damages), the Court will grant Defendants' motion to dismiss Plaintiffs' Complaint as to these causes of action.

### 4.   <u>Abrogation Clause in Title II of the ADA</u>

Finally, the Court turns to Plaintiffs' claims under the ADA, which Plaintiffs explicitly raise in counts one and four of the Complaint.  In the case of the Americans with Disabilities Act, Congress included an express abrogation clause in the statute.  <u>See</u> 42 U.S.C. § 12202 ("[a] State shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.").  Defendants argue that the abrogation clause is invalid as to Plaintiff's claim.  Plaintiffs, in opposition to Defendants' motion to dismiss, cite to a federal regulation (28 C.F.R. § 35.178) that reiterates this express statutory abrogation clause.  The Court must therefore determine whether this express abrogation clause applies to Plaintiffs' claims.

Under the plain text of this statute, Congress would appear to have expressly abrogated Defendants' sovereign immunity. However, this abrogation clause has been narrowed in its application by the Supreme Court.  The Supreme Court has held that the abrogation clause in § 12202 is unconstitutional as applied to claims for damages under Title I of the ADA (the

15

subchapter regarding employment practices).  <u>Board of Trustees of the University of Alabama v. Garrett</u>, 531 U.S. 356, 367-68 (2001).  With regards to Title II of the ADA, the provision governing public services which is implicated here, the Supreme Court has narrowly upheld it.

In <u>United States v. Georgia</u>, 546 U.S. 151 (2006), the Supreme Court considered a Title II claim in which a state prison inmate sued the state prison system for constitutional violations related to his physical handicap (the plaintiff was confined to a wheelchair).  <u>Id.</u> at 154-55.  The Court in that case held that the abrogation clause of the ADA would be constitutional as applied to the plaintiff's case, provided that the plaintiff had alleged conduct that stated a claim for a violation of Title II of the ADA, and that same conduct also constituted an actual violation of the Fourteenth Amendment.  <u>Id.</u> at 158-59.  The Court explained, however, that the record was not clear as to what conduct the plaintiff intended to allege in support of his Title II claims, so the Court remanded the action with instructions on how to evaluate whether the abrogation clause could constitutionally be applied to his claim.  <u>Id.</u> at 159.

> [T]he lower courts will be best situated to
> determine in the first instance, on a
> claim-by-claim basis, (1) which aspects of the
> State's alleged conduct violated Title II; (2)
> to what extent such misconduct also violated
> the Fourteenth Amendment; and (3) insofar as
> such misconduct violated Title II but did not
> violate the Fourteenth Amendment, whether

16

> Congress's purported abrogation of sovereign
> immunity as to that class of conduct is
> nevertheless valid.

Id.

The Third Circuit has interpreted United States v. Georgia to require that a district court, confronted with a Title II suit for damages against a state entity, must consider first whether any conduct is alleged that states a valid claim for a violation of Title II; only if the court concludes that the complaint alleges conduct that states a claim under Title II does the court next proceed to evaluating the constitutionality of the abrogation clause as applied to such claim.  Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 (3d Cir. 2007) ("Thus, we are required to determine in the first instance if any aspect of the University's alleged conduct forms the basis for a Title II claim.").  This procedure also comports with the general rule of constitutional avoidance that a federal court should not unnecessarily decide a constitutional question, such as the constitutionality of the scope of the ADA's abrogation clause as applied to a particular set of claims.  Id. at 550.

Consequently, to determine whether Defendants retain sovereign immunity (and, therefore, whether the Court has subject matter jurisdiction to hear Plaintiffs' Title II claims), the Court must first evaluate whether Plaintiffs state a valid claim under Title II.

17

Title II of the ADA addresses disability discrimination in the availability of or entitlement to public services.

> Title II prohibits a "qualified individual with a disability" from being "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity" because of the individual's disability.

Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 (3d Cir. 2007) (quoting 42 U.S.C. § 12132).

> To succeed on a claim under Title II, [a plaintiff] must demonstrate: (1) he is a qualified individual; (2) with a disability (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.

Id. at 553 n.32.

In count one, Plaintiffs allege that Joseph is a disabled adult in need of constant supervision and care who is currently being cared for at home by his parents; Joseph's at-home care is supported, in part, through state funding and resources available through the CRPD Waiver. Plaintiffs further allege that the funding available through the CRPD Waiver is capped at a monthly allowance equal to the amount that it would cost to care for Joseph in an institutional setting. Plaintiffs allege that the monthly cap is not as high as they would like or that they feel they need, given the cost of paying for at-home nursing, but Plaintiffs do not allege that they have been forced to go without

18

nursing due to the monthly cost cap allowance or that Joseph has
been forced to be institutionalized as a result of the
Defendants' funding policies.

The Court concludes that Plaintiffs' allegations in count
one do not state a claim for a violation of Title II of the ADA.
Assuming that Plaintiffs have alleged sufficient facts to infer
that Joseph is a qualified individual with a disability, the
Court finds that Plaintiffs have not alleged facts sufficient to
infer that Joseph has been excluded from or denied the benefits
of the services, programs or activities of a public entity
because of his disability.  To the contrary, Plaintiffs have
alleged that Joseph is a beneficiary of the services and programs
of the CRPD Waiver program, but that they feel that such services
are insufficient, though they have not alleged any specific
injury caused by such insufficiency other than a subjective fear
that they may, in the future, be unable to care for Joseph at
home without more financial support and resources than it would
cost the state to care for him in a nursing-care facility.

The insufficiencies of Plaintiffs' claim are highlighted
when contrasted with a case Plaintiffs cite in their Complaint,
Olmstead v. Zimring, 527 U.S. 581 (1999).  In Olmstead, two
different plaintiffs alleged violations of Title II of the ADA
based on their mandatory institutionalization based on their
disability.  In both cases, the plaintiffs, who suffered from

19

mental illnesses and mental disabilities, were denied placement in community-based settings rather than institutional care facilities, despite the availability of such care at a cost lower than institutionalization and the recommendations of the plaintiffs' medical providers.  Id. at 593-94.[7]  The district court below concluded, and the Supreme Court affirmed, that the plaintiffs had alleged a claim under Title II on such facts because they had alleged they were qualified for in-home care that was reasonably available but had been denied it in circumstances amounting to discrimination by segregation.  Id. at 597.

In the instant case, by contrast, Plaintiffs have not alleged that Joseph has been institutionalized against his will; they have, by contrast, alleged that he has been given resources and funding to permit him to be cared for at home.  Plaintiffs allege only (and with no specificity as to themselves) that the CRPD Waiver funding is insufficient to meet their needs.  This is not enough to state a claim for a violation of Title II of the Americans with Disabilities Act.

The result is the same when the Court turns to consider count four of the Complaint.  In count four, Plaintiffs allege

---

[7] The Court notes that sovereign immunity was not an issue in the Olmstead case, presumably because the Plaintiffs sought prospective injunctive relief from state officers rather than damages from the state.  See Olmstead at 594.

20

that Defendants discriminate against them, rather than Joseph, by requiring that they be able to provide some unspecified amount of hours of care on their own without any in-home nursing care, despite Plaintiffs' own disabilities.  The Court finds that Plaintiffs have not sufficiently alleged the first element of the claim -- that they are qualified individuals with a disability under the statute.  See 42 U.S.C. § 12131(2) (defining "qualified individual with a disability" as an individual who, among other requirements, "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.").  As Plaintiffs have alleged the facts, it is Joseph, not Plaintiffs themselves, who is a qualified individual receiving services.  Plaintiffs have not alleged that they themselves are independently qualified to receive services from Defendants.  Consequently, Plaintiffs fail to state a claim for violation of Title II in count four.[8]

The Court therefore concludes that Plaintiffs have not alleged any conduct of Defendants that states a claim for a violation of Title II of the ADA.  As a result, the Court finds that, under Bowers and United States v. Georgia, the abrogation clause of the ADA does not apply to Plaintiffs' claims.

---

[8] The Court additionally notes that Plaintiffs fail to allege facts sufficient to meet the third element of the claim -- that they are denied benefits of the program by reason of their disabilities -- for the same reason as above.

Accordingly, the Court concludes that it lacks subject matter jurisdiction in this matter because Defendants retain their sovereign immunity from suit for money damages in this Court. The Court will thus grant Defendants' motion to dismiss for lack of subject matter jurisdiction.

## IV.   CONCLUSION

The Court has concluded that it lacks subject matter jurisdiction to hear Plaintiffs' claims against Defendants because Plaintiffs are seeking damages from agencies of the State of New Jersey on causes of action that lack any adequate abrogation of Defendants' Eleventh Amendment sovereign immunity. Consequently, the Court will dismiss Plaintiffs' Complaint.  The Court's dismissal is without prejudice because Plaintiffs could potentially cure the Court's subject matter deficiency and overcome sovereign immunity by seeking prospective relief instead of damages.  However, the Court notes, if Plaintiffs seek leave to file an amended complaint that cures the sovereign immunity problems, they should also carefully examine the deficiencies that the Court has identified in the substance and sufficiency of their factual allegations under Title II.  Meanwhile, this Complaint must be dismissed.

The accompanying Order will be entered.


**July 25, 2012**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge